**Mark A. CHRISTESON, Appellant,**

v.

**STATE of Missouri, Respondent.**

No. SC 85329.

Supreme Court of Missouri,
En Banc.

April 13, 2004.

Rehearing Denied May 11, 2004.

William J. Swift, Office of the State Public Defender, Columbia, for appellant.

Jeremiah W. (Jay) Nixon, Atty. Gen., Linda S. Lemke, Theodore A. Bruce, Asst. Attys. Gen., Jefferson City, for respondent.

RONNIE L. WHITE, Chief Justice.

## I.

A jury in Vernon County convicted Appellant, Mark Christeson, of three counts of first-degree murder and imposed three death sentences. This Court upheld Appellant's conviction and sentence on direct appeal.[1] Appellant now appeals from the overruling of his Rule 29.15 postconviction relief motion, raising seventeen points of error. This Court has jurisdiction pursuant to Mo. Const. art. V, sec. 10; order of June 16, 1998. Affirmed.

## II.

Reviewing points on appeal from the denial of postconviction relief is limited to a determination of whether the findings and conclusions of the trial court are

1. *State v. Christeson*, 50 S.W.3d 251 (Mo. banc 2001).

clearly erroneous.[2] The findings and conclusions are clearly erroneous only if the appellate court is left with the definite impression that a mistake has been made.[3]

## III.

■■■ Appellant's points I, II, III, VI, and VII provide the Court with a list of complaints regarding the trial counsel's failure to call particular witnesses or elicit particular testimony from witnesses in either the guilt or sentencing phases of the trial. In Appellant's point V, he contends that appellate counsel was ineffective for failing to raise four different issues that he believes would have mandated reversal of his conviction. Appellant's point XIII alleges trial counsel was ineffective for failing to give a more detailed penalty phase opening statement and closing argument. The common threads to these claims are that all involve matters of trial and/or appellate strategy or eliciting testimony that would have been cumulative in nature. Counsel is not ineffective for failing to put on cumulative evidence and "reasonable choices of trial strategy, no matter how ill fated they appear in hindsight, cannot serve as a basis for a claim of ineffective assistance."[4] The record on appeal and the briefs of the parties have been reviewed extensively on these points. Find-

ing no error of law, an extended opinion on these issues would have no precedential value.[5] Points I, II, III, V, VI, VII, and XIII are denied.

## IV.

In point IV, Appellant claims trial counsel was ineffective for failing to raise multiple objections to the prosecutor's examinations of several witnesses and to several statements the prosecutor made to the venire panel during death penalty qualification. Appellant claims that counsel's failures allowed the prosecutor to engage in inappropriate vouching and bolstering of the evidence supporting his co-defendant's competence and supporting the allegation that Mr. Christeson's testimony was untruthful. Appellant also contends that the failure to object to the statements made to the venire panel had the effect of lowering the prosecutor's burden of proof.

Point IX of Appellant's argument alleges ineffective assistance of trial counsel for failure to object to statements that the prosecutor made during his closing argument and his rebuttal during the guilt phase argument. Specifically, Appellant claims that one of the prosecutor's statements violated his right not to testify and the other inappropriately made an excessive religious reference.

---

**2.** Rule 29.15(k); *Ringo v. State,* 120 S.W.3d 743, 745 (Mo. banc 2003).

**3.** *Ringo,* 120 S.W.3d at 745.

**4.** *Skillicorn v. State,* 22 S.W.3d 678, 683 (Mo. banc 2000); *Clayton v. State,* 63 S.W.3d 201, 206 (Mo.banc2001); *Holman v. State,* 88 S.W.3d 105, 110 (Mo.App.2002).

**5.** Rule 30.25. It should be noted that Appellant has combined multiple claims of error into many of his points on appeal when these claims should be segregated into individual points. "Points containing multifarious allegations of error violate Rule 30.06." *State v. Thompson,* 985 S.W.2d 779, 784, FN 1 (Mo. banc 1999) *citing to, Thummel v. King,* 570

S.W.2d 679, 688 (Mo. banc 1978). Nevertheless, "[t]his Court's policy is to decide a case on its merits rather than on technical deficiencies in the brief. Generally, this Court will not exercise discretion to disregard a defective point unless the deficiency impeded disposition on the merits. A brief impedes disposition on the merits where it is so deficient that it fails to give notice to this Court and to the other parties as to the issue presented on appeal. If the defective brief fails to meet that standard, the point will be disregarded, reviewed only for plain error, or the appeal dismissed." *J.A.D. v. F.J.D.,* 978 S.W.2d 336, 338 (Mo. banc 1998).

■■■■ This Court has thoroughly reviewed the trial transcripts referenced by Appellant and cannot find an instance where the prosecutor attempted to imply special facts or offer out-of-court statements duplicating the trial testimony to support Appellant's claims of vouching or bolstering.[6] The prosecutor's statements to the venire panel correctly stated how aggravating and mitigating circumstances are to be weighed; consequently, they did not lower the State's burden. Additionally, the statements made during the prosecutor's closing argument directly referenced the Appellant's testimony and did not implicate his right not to testify. The *biblical reference was isolated and not excessive.* Again, finding no error of law, an extended opinion on these issues would have no precedential value.[7] Points IV and IX are denied.

**V.**

In his eighth point, Appellant contends that Judge Darnold inappropriately presided over his Rule 29.15 postconviction relief hearing because he had been defeated in the 2000 election for judge of the twenty-eighth circuit. Appellant claims that the will of the people was made clear during this election and that Judge Darnold cannot serve in any capacity as a judge in this circuit.

■■■■ Judge Darnold retired at the end of his term of office, and once retired, this Court has the authority to assign the judge to preside over a postconviction case as a senior judge.[8] This is precisely what

happened. There is no constitutional, legislative, or precedential restriction that supports Appellant's argument.

**VI.**

In points X and XVII, Appellant raises multiple claims of error in association with the jury instructions that were given during the guilt and penalty phases of the trial. Specifically Appellant contends that: (1) trial counsel was ineffective for not requesting an optional "no adverse inference" instruction during the penalty phase of the trial, where Appellant did not testify; (2) that MAI–CR 3d 311.46A, instructing that the jury is not required to fix death as punishment, should have been given at the end of each of the three murder counts instead of at the end of all three counts; (3) that instructions 6, 9, and 12, and the converse instructions in 7, 10, and 13 failed to make clear that the jury had to make a determination as to the element of deliberation; (4) that instruction 21 did not make clear the actions required to find the depravity of mind aggravating circumstance; and (5) that trial counsel was ineffective for failing to put on evidence from Dr. Richard Wiener's research supporting the contention that jurors do not understand penalty phase instructions.

■■■■ The "no-adverse inference" instruction can serve to call the jury's attention to the defendant's decision not to testify, which can, by itself, result in a negative inference directed towards the defendant. The motion court found the

---

6. See *State v. Wolfe,* 13 S.W.3d 248, 256 (Mo. banc 2000); *State v. Silvey,* 894 S.W.2d 662, 672 (Mo. banc 1995).

7. Rule 30.25. Counsel also raises an argument in point IV concerning the difference between the defendant's capacity to understand the proceedings and assist in his defense as opposed to a *witness' competency to*

testify. This Court declines to address this argument because this is the first time Appellant has raised it, and claims not presented to the motion court cannot be raised for the first time on appeal. *State v. Nunley,* 980 S.W.2d 290, 292 (Mo. banc 1998).

8. Mo. Const. art. V, section 26.

decision not to request the instruction to be based upon reasonable trial strategy, and "[a]n objectively reasonable choice not to submit an available instructions does not constitute ineffective assistance of counsel."[9] Even assuming that the motion court erred, Appellant fails to demonstrate how failure to give this instruction would have prejudiced the outcome of the trial in the face of the evidence presented.[10]

■ The alleged instructional error with the repetition of MAI–CR 3d 313.46A also fails because Appellant has not demonstrated how not reading the instruction after each murder count prejudiced the outcome of his trial. The instruction that death is not a required sentence was read to the jury and was provided to them in writing in clear association with the three murder counts.

■ With regard to the claims concerning the instructions on deliberation and depravity, both instructions were properly given and not prejudicial. The fact that trial counsel lodged no objection to these instructions is irrelevant because trial counsel will not be deemed ineffective for failing to make non-meritorious objections.[11]

■ Concerning the claim that trial counsel was ineffective for not introducing into evidence the testimony and/or the latest research by Dr. Richard Wiener on a jury's ability to understand Missouri's penalty phase instructions, this Court has not-

ed previously that there were flaws in Dr. Wiener's studies. Even if Dr. Wiener's current research demonstrates a correlation between juror verdicts and comprehension of instructions, nothing presented in the post-conviction relief proceeding established an affirmative link of that study to the facts of the present case that could have raised the level of this allegation to that of a meritorious claim of ineffectiveness. The MAI instructions are constitutional, and there was no error in law with their delivery to the jury.[12]

## VII.

■ In point XI, Appellant alleges that trial counsel was ineffective for failing to strike venire person Mr. Conner. Appellant claims that Juror Conner's testimony indicated that he would automatically impose the death penalty upon conviction and would not consider life in prison as a punishment. The transcript reveals that while Mr. Conner may have believed that committing murder justified receiving the death penalty, he also stated that he would have to be completely convinced to find guilt and award a death sentence. Mr. Conner further stated that there would have to be "no doubt in my mind that he did it," before making a decision. Mr. Conner's statements reveal that he would apply a standard higher than that required for conviction and giving the death sentence. The motion court's finding that trial counsel was not ineffective for failing

**9.** *Love v. State,* 670 S.W.2d 499, 502 (Mo. banc 1984).

**10.** Appellant must establish that his counsel's performance failed to conform to the degree of skill, care, and diligence of a reasonably competent attorney, and that the defendant was thereby prejudiced. The appellant has the burden of proving prejudice by showing a reasonable probability that, but for counsel's errors, the result of the proceeding would

have been different. *Strickland v. Washington,* 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984).

**11.** *State v. Clay,* 975 S.W.2d 121, 135 (Mo. banc 1998).

**12.** *Lyons v. State,* 39 S.W.3d 32, 43 (Mo. banc 2001).

to strike Mr. Conner from the panel was not clearly erroneous.

## VIII.

In points XII and XIV Appellant alleges two instances of prosecutorial error. Appellant specifically claims that the State improperly presented inconsistent theories of the murders when comparing his trial with that of his co-conspirator and that the charging document was defective for only charging him with "unaggravated murder."

 Appellant, however, fails to demonstrate reversible error. Even assuming, arguendo, that Appellant is correct regarding the presentation of inconsistent theories, the Appellant's co-conspirator was tried after Appellant, and any inconsistent theory presented at that trial could not have possibly prejudiced Appellant.[13]

 With regard to the charging document, this Court has addressed this claim numerous times before. The omission of statutory aggravators from an indictment charging defendant with first-degree murder does not deprive the sentencing court of jurisdiction to impose the death penalty.[14] Missouri's statutory scheme recognizes a single offense of murder with maximum sentence of death, and the requirement that aggravating facts or circumstances be present to warrant imposition of death penalty did not have the effect of increasing the maximum penalty for the offense.[15]

## IX.

In Appellant's remaining points, XV and XVI, he claims trial counsel was ineffective for not challenging this Court's proportionality review in his direct appeal, and while he has not yet applied for clemency to make his claim ripe, he claims that he should be given life imprisonment because the clemency process is arbitrary and unconstitutional. This Court has repeatedly rejected such claims.[16] Having examined these claims thoroughly and finding no error of law, an extended opinion on these issues would have no precedential value.[17]

## X.

The judgment is affirmed.

All concur.

---

13. *Id.* "First, Defendant must show that the impropriety was so egregious that it fatally infected the proceedings and rendered the entire trial fundamentally unfair. Second, the burden is on Defendant to demonstrate a reasonable probability that the error complained of affected the outcome of the trial, meaning that the verdict probably would have been different absent the alleged impropriety." *State v. Carter,* 71 S.W.3d 267, 272 (Mo. App.2002).

14. *State v. Cole,* 71 S.W.3d 163, 171 (Mo. banc 2002).

15. *Id.*

16. *State v. Edwards,* 116 S.W.3d 511, 548(N 6) (Mo. banc 2003); *State v. Wolfe,* 13 S.W.3d 248, 266 (Mo. banc 2000); *State v. Rousan,* 961 S.W.2d 831, 854–55 (Mo. banc 1998); *Middleton v. State,* 103 S.W.3d 726, 743 (Mo. banc 2003).

17. Rule 30.25.